1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON SMITH,<br><br>             Plaintiff,<br><br>     v.<br><br>M. DAGUIO, et al.,<br><br>             Defendants. | Case No. 18-06378 BLF (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br><br><br>(Docket No. 20) |

Plaintiff, a state prisoner, filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against prison officers at the Correctional Training Facility ("CTF") in Soledad.  Dkt. No. 1.  The Court dismissed the original complaint with leave to amend. Dkt. No. 6.  The Court found Plaintiff's first amended complaint ("FAC"), Dkt. No. 7, stated a cognizable First Amendment claim for retaliation, and ordered Defendants to file a motion for summary judgment or other dispositive motion.  Dkt. No. 8.[1]  Defendants R. Avalos and M. Daguio filed a motion for summary judgment on the grounds that Plaintiff

---

[1] In the same order, the Court dismissed Plaintiff's access to the courts and equal protection claims for failure to state a claim after being given one opportunity to correct the deficiencies of these claims, and dismissed his due process claim to filing as a separate habeas action.  Dkt. No. 8 at 7.  All other named defendants were dismissed from this action as all claims against them were dismissed.  *Id.*

failed to exhaust administrative remedies, and that Plaintiff's claim for damages against them in their official capacity is barred by the Eleventh Amendment.  Dkt. No. 20.[2] Plaintiff filed opposition with exhibits, Dkt. No. 21, and Defendants filed a reply, Dkt. No. 22.  For the reasons stated below, Defendants' motion for summary judgment is **GRANTED** for failure to exhaust administrative remedies.

## DISCUSSION

### I.    Plaintiff's Claims

Plaintiff claims that on January 23, 2018, he had Preferred Legal User ("PLU") status for the law library.  Dkt. No. 7 at 6, ¶ 11.  At 8:45 a.m. that morning, Plaintiff attempted to go to the library but was stopped by Defendant M. Daguio who told him it was an "Education release only" and ordered him back to his cell; Plaintiff complied.  *Id.* at ¶ 12.  Plaintiff claims he was later allowed access to the library at 10:00 a.m.  *Id.* at ¶ 13. On the way to the library, Plaintiff complained about the delay to the Unit II Supervisor, Sgt. Rendon.  *Id.*

On January 25, 2018, at approximately 8:30 a.m., Plaintiff asked Defendant Daguio for an "Inmate Temporary Pass" to access the law library.  *Id.* at ¶ 14.  Defendant Daguio gave him the pass as requested.  *Id.* at ¶ 15.  At that time, Plaintiff also informed Defendant Daguio that he intended to file an administrative grievance against him for denying Plaintiff access to the law library on January 23, 2018.  *Id.* at ¶ 14.  Plaintiff claims that in response, Defendant Daguio threatened to assign a cellmate to Plaintiff or have him moved out of the unit before the day was over, also stating that he was tired of hearing about all the grievances Plaintiff had submitted in the past.  *Id.* at ¶ 15.  Plaintiff claims that he filed an inmate appeal (Log No. CTF-18-00262), that same day, alleging (1) denial of access to the law library, and (2) retaliation.  *Id.* at ¶ 16.

---

[2] In support of their motion, Defendants submit the declaration of A. Vasquez from the Office of Appeals, Dkt. No. 20-1, along with supporting exhibits, Dkt. Nos. 20-2 to 20-4.

United States District Court
Northern District of California

Plaintiff claims that later that same day after returning from the law library, Defendant R. Avalos informed him that he was being assigned a cellmate, and that any objections would result in a Rules Violation Report ("RVR"). *Id.* at ¶ 18. Plaintiff claims this directive came from Defendant Daguio and that Defendant Avalos stated she would stand with her colleague, "right or wrong." *Id.*

After his prospective cellmate arrived and they had spoken, Plaintiff allegedly informed Defendant Avalos that they were not compatible. *Id.* at ¶ 21. Plaintiff claims that the cellmate posed a significant risk of physical safety because of the inmate's interest in possessing dangerous contraband. *Id.* Plaintiff claims Defendant Avalos responded, "Like I told you earlier, M. Daguio my colleague said to give you an RVR and that's what I am going to do." *Id.*, *id.* at ¶ 22.

Based on the foregoing allegations, the Court found the amended complaint stated a cognizable claim for retaliation under the First Amendment based on Plaintiff's allegations that Defendants' adverse actions, *i.e.,* assigning him a cellmate and issuing a false RVR because he engaged in protected conduction, chilled his First Amendment rights and did not reasonably advance a legitimate correctional goal. Dkt. No. 8 at 5.

## II.     **Summary Judgment**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

3

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id*. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id*. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id*. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

A.    **Statement of Facts**[3]

On January 25, 2018, Plaintiff submitted a grievance against Defendant Daguio, which was labeled as Log No. CTF-S-18-00262.  *See supra* at 2; Dkt. No. 7, ¶ 16; *id.* at 24-33 (Ex. A to FAC); Vasquez Decl., Ex. B at Dkt. No. 20-3.  Plaintiff stated in the grievance that the subject of the appeal was "denial of access to the law library," and described therein Defendant Daguio's conduct on January 23, 2018.  Dkt. No. 20-4 at 2, 4.  In the space provided for explaining the issue (Section A), there is no description of any other action by Defendant Daguio, such as being assigned a cellmate or receiving an RVR as alleged in the amended complaint, nor is Defendant Avalos mentioned.  *Id.*  Plaintiff mentions Defendant Avalos and her actions for the first time when he stated his dissatisfaction with the first level response on March 1, 2018; Plaintiff asserted that "he was retaliated against for filing the said inmate grievance on 01/25/18 by C/O M. Daguio and C/O R. Avalos" when the former threatened to give him a cellmate and the latter threatened to issue an RVR if he refused the housing assignment.  *Id.* at 3, 5.  Plaintiff sought the following relief in this grievance: (1) that Defendant Daguio adhere to Operation Procedure #113 which provides staff with guidelines regarding Facility C Release and Unlocks; (2) that Defendant Daguio "cease and desist from any further retaliatory conduct direct or indirectly"; (3) the matter be investigated by Warden's designee to determine that Defendant Daguio did allow other inmates to the library at 8:30 a.m. on January 23, 2018, and the library log all ducats into SOMS; (4) that Unit I and II Captains are responsible for ensuring compliance with procedures, and their failure to do so makes them liable; and (5) compensation for Defendant Daguio's "deliberate indifference."  *Id.* at 2, 4.  This grievance was administratively exhausted on July 3, 2018, when the third level appeal decision, denying the grievance, was issued.  Vasquez Decl., Ex. B.

---

[3] The following facts are undisputed unless otherwise indicated.

On January 26, 2018, Plaintiff received an RVR issued by Defendant Avalos, charging him with the specific act of "Refusing to Accept Assigned Housing – Delaying a Peace Officer of His Duties." Dkt. No. 21 at 19. At the disciplinary hearing on January 31, 2018, Plaintiff was found guilty of the offense. *Id.* at 20. On March 18, 2018, Plaintiff filed an inmate grievance Log No. CTF-S-18-00776, appealing the RVR. *Id.* at 17-18. Plaintiff claimed that the senior hearing officer "possessed a predetermine[d] belief" of Plaintiff's guilt and denied him due process, as well as denying him witnesses, including Defendant Avalos, at the hearing. *Id.* Plaintiff claimed that the inmate housing assignment was done "in retaliation for appellant filing an inmate grievance against C/O Daguio." *Id.* at 18. Plaintiff wanted the appeals coordinator to investigate the due process violations he alleged in the grievance, answer and confirm related questions, and dismiss the RVR. *Id.* On May 29, 2018, the grievance was partially granted at the second level of appeal, which directed the RVR be reissued and reheard due to a procedural error, *i.e.*, the senior hearing officer's failure to record the reason for denying Plaintiff's requested witnesses. *Id.* at 24. On August 13, 2018, the Office of Appeals, which acts as the third level of review, notified Plaintiff that the appeal to the third level was cancelled because the issue under appeal "has been resolved at a previous level." *Id.* at 16.

**B.**   **Exhaustion**

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and no longer left to the discretion of the district court. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards." *Id.* Even when the relief sought cannot be granted by the administrative process, i.e., monetary damages, a prisoner must

still exhaust administrative remedies.  *Id*. at 85-86 (citing *Booth*, 532 U.S. at 734).  The PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies.  *Id*. at 93.  An action must be dismissed unless the prisoner exhausted his available administrative remedies <u>before</u> he or she filed suit, even if the prisoner fully exhausts while the suit is pending.  *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002); *see Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (where administrative remedies are not exhausted before the prisoner sends his complaint to the court it will be dismissed even if exhaustion is completed by the time the complaint is actually filed).

The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (repealed eff. June 1, 2020).[4]  It also provided its inmates the right to file administrative appeals alleging misconduct by correctional officers.  *See id*. § 3084.1(e).  Under the regulations in effect at the relevant time of this action, in order to exhaust available administrative remedies within this system, a prisoner must submit his complaint on CDCR Form 602 (referred to as a "602") and proceed through three levels of appeal: (1) first formal level appeal filed with one of the institution's appeal coordinators, (2) second formal level appeal filed with the institution head or designee, and (3) third formal level appeal filed with the CDCR director or designee.  *Id*. § 3084.7.

---

[4] The regulations that set out the features of the administrative remedies process for California prisoners underwent a substantial restructuring earlier this year.  On March 25, 2020, and effective June 1, 2020, California Code of Regulations, Title 15, sections 3084 through 3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487.  All the citations in this order to the California regulations are to the regulations in place during the relevant period of this action, rather than to the current regulations.

United States District Court
Northern District of California

United States District Court
Northern District of California

Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Id*. at 218. In California, the regulation requires the prisoner "to lodge his administrative complaint on CDC form 602 and 'to describe the problem and action requested.'" *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (quoting Cal. Code Regs. tit. 15 § 3084.2(a)); *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (same). California regulations also require that the appeal name "all staff member(s) involved" and "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3).

Where a prison's grievance procedures do not specify the requisite level of factual specificity required in the grievance, as in California, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). The grievance need not include legal terminology or legal theories unless they are needed to provide notice of the harm being grieved. *Id.* Nor must a grievance include every fact necessary to prove each element of an eventual legal claim. *Id.* The purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. *Id.* The grievance should include sufficient information "to allow prison officials to take appropriate responsive measures." *Id.* (citation and internal quotation omitted) (no exhaustion where grievance complaining of upper bunk assignment failed to allege, as the complaint had, that nurse had ordered lower bunk but officials disregarded that order); *see Wilkerson v. Wheeler*, 772 F.3d 834, 840 (9th Cir. 2014) (claim properly exhausted where inmate described nature of the wrong and identified defendant as a responding officer who applied pressure to inmate's ankle deliberately to inflict pain).

Nonexhaustion under § 1997e(a) is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 211 (2007). Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints. *Id*. at 215-17. In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). Otherwise, defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Id*. If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id*. at 1166. But if material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id*.

The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy. *Id*. at 1172; *see id*. at 1176 (reversing district court's grant of summary judgment to defendants on issue of exhaustion because defendants did not carry their initial burden of proving their affirmative defense that there was an available administrative remedy that prisoner plaintiff failed to exhaust); *see also Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005) (as there can be no absence of exhaustion unless some relief remains available, movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting results of relief already granted as result of that process). Once the defendant has carried that burden, the prisoner has the burden of production. *Albino*, 747 F.3d at 1172. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id*. But as required by *Jones*, the ultimate burden of proof remains with the defendant. *Id*.

///

9

United States District Court
Northern District of California

### C.      Legal Analysis

Defendants argue that Plaintiff's grievance is limited to the allegations he made when he initially filed the grievance on January 25, 2018, *i.e.*, specifically the conditions or conduct described in Section A of the grievance form. Dkt. No. 20 at 7. As such, Defendants assert that Plaintiff only exhausted his claims related to the delay in going to the law library on January 23, 2018. *Id.* Moreover, Defendants assert that Plaintiff's original grievance does not identify Defendant Avalos. *Id.* Defendants assert that Plaintiff should have filed a subsequent grievance regarding the specific conduct that occurred after he filed the original grievance. *Id.* Defendants assert that Plaintiff's record of inmate grievances shows that he was not unfamiliar with but rather had a full understanding of the CDCR's grievance process. *Id.* He could have, but did not, submit a subsequent grievance regarding Defendants Daguio and Avalos' conduct that occurred later that day, after he had filed the first grievance. *Id.* Therefore, Defendant asserts, summary judgment should be granted for failure to exhaust administrative remedies before filing suit. *Id.*

In opposition, Plaintiff asserts that he has satisfied the PLRA requirements for exhaustion, and that his inmate grievances exhausted all the claims in this action against Defendants Daguio and Avalos. Dkt. No. 21 at 2. He asserts that in order to satisfy the exhaustion requirement, "grievances generally need only be sufficient to alert the prison to the nature of the wrong for which redress is sought," and that "prisoners need not file multiple, successive grievances raising the same issue, if the objectionable condition is continuing." *Id.* at 4. Plaintiff asserts that therefore, "once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Id.* at 4-5. He also asserts that exhaustion is satisfied "if the prison officials decided the potentially flawed grievance on the merits." *Id.* at 5. Plaintiff asserts that the grievance he filed on January 25, 2018, satisfied exhaustion as it clearly indicated all the issues in this action. *Id.* at 6. He also asserts that exhaustion was alternatively satisfied through appeal Log No. CTF-S-18-00776, appealing the RVR issued

United States District Court
Northern District of California

by Defendant Avalos which also contained the allegation that the inmate housing assignment was done in retaliation for his filing an inmate grievance against Defendant Daguio.  *Id.*, Ex. E.  Lastly, he asserts that nowhere in the responses for the two grievances did prison officials indicate that either grievance was procedurally barred but decided all claims on the merits.  *Id.* at 6.

In reply, Defendants assert that the evidence shows that prison officials never considered Plaintiff's retaliation claim based on the housing assignment that occurred after he filed the grievance on January 25, 2018, nor did they waive the administrative grievance procedures in later hearings or grievances.  Dkt. No. 22 at 1-2.  Defendants point out that Plaintiff mentioned this new issue for the first time during the first level appeal interview having failed to include it in the "appeal issues" section of the grievance.  *Id.* at 2.  Defendants assert that none of the levels mention retaliation related to the housing assignment, and that there is no evidence that the issue was adjudicated on the merits at all three levels of review.  *Id.*  Defendants also assert that raising the issue for the first time in Section D of the grievance violated the time guidelines under CDCR regulations and therefore does not constitute exhaustion.  *Id.* at 3-4.  Lastly, Defendants assert Plaintiff's subsequent grievance challenging the RVR did not exhaust the retaliation claim because it was not the subject of the grievance and it was screened out at the third level.  *Id.* at 4.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff did not properly exhaust all available administrative remedies with respect to his claim that Defendants issued an inmate housing assignment in retaliation for filing grievances.  Contrary to his assertions, the grievance Plaintiff filed on January 25, 2018, Log No. CTF-S-18-00262, did not explicitly identify retaliation as a subject of the grievance.  Rather, the "subject" of the appeal was clearly stated as being "denial of access to the law library" which Plaintiff described as occurring on January 23, 2018.  Dkt. No. 21 at 11.  In Section A and B of the complaint, Plaintiff makes only vague references to retaliation, and never in connection with a housing assignment.  Rather, his complaint

regarding a retaliatory housing assignment was not mentioned until over a month later on March 1, 2018, when Plaintiff expressed dissatisfaction at the first level of appeal decision. *Id.* at 3, 5.  Based on this information in Sections A and B and the lack of any description of other specific wrongful conduct, Plaintiff was clearly only complaining of Defendant Daguio's retaliatory act of denying him access to the library on January 23, 2018, when he filed Log No. CTF-S-18-00262 on January 25, 2018.  Furthermore, Plaintiff made no mention of Defendant Avalos or described any desired action against her such that prison officials were alerted to the fact that Plaintiff was also seeking relief from that officer's conduct.

Relying on *Reyes v. Smith*, 810 F.3d 654 (9th Cir. 2016), Plaintiff claims the issue of retaliation in connection with the housing assignment was exhausted and that any procedural defect was waived because the different appeal decisions nevertheless addressed it on the merits.  *See supra* at 10.  If an inmate's grievance does not comply with a procedural rule but prison officials decide it on the merits anyway at all available levels of administrative review, it is exhausted.  *Reyes*, 810 F.3d at 656, 658.[5]  However, as Defendants point out, the grievance was not decided on the merits at all available levels of review.  The first level appeal decision mentioned that Plaintiff alleged retaliation in connection with a housing assignment during the first level interview on February 20, 2018, and that Defendant Daguio was interviewed about the allegation on the same day.  Dkt. No. 20-4 at 60.  Its decision specifically referenced the 5 itemized actions that Plaintiff requested in the grievance under Section B.  Dkt. No. 20- at 6-7.  With respect to retaliation, it merely stated: "appellant's request to have C/O Daguio cease and desist from further retaliatory conduct direct or indirectly and to have no reprisals is moot as CTF is in

---

[5] Thus, a California inmate whose grievance failed to name all staff members involved in his case, as required by 15 Cal. Code Regs. § 3084.2(a)(3), nevertheless exhausted his claim of deliberate indifference to his serious medical needs because that claim was decided on its merits at all levels of review.  *Reyes*, 810 F.3d at 656-57.

compliance with California Code of Regulations, Title 15, Division 3, Chapter 1, Article 8. § 3084.1(d).[6]" *Id.*  The second level appeal repeated the "appeal issue" and "action requested" that was stated in the first level decision, and found that the first level decision was "complete and comprehensive and the appellate provided no information that would justify any changes." *Id.* at 8.  The second level appeal decision also acknowledged Plaintiff's repeated allegation that Defendant Daguio retaliated against him with respect to the housing assignment, but its final decision was identical to the first level appeal decision in all respects, and did not specifically address nor mention the later added claim.  *Id.* at 9.

Even if the Court were to construe the first and second level decisions as decisions on the merits of Plaintiff's retaliation claim in connection with the housing assignment, the third level decision makes it clear that it was not addressing any such claim.  The third level appeal decision only discussed Plaintiff's original allegations regarding the denial of access to the library as described in Sections A and B of the grievance form filed on January 25, 2018.  Dkt. No. 20-3 at 2.  Furthermore, its summary of the second level decision only includes facts regarding the investigation into the denial of library access claim.  *Id.*  In closing, the third level appeal decision made it clear that it was intentionally not addressing any new issues and requests that Plaintiff had added to the appeal: "The appellant has added new issues and requests to the appeal.  The additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action (CDC Form 602, Inmate/Parolee Appeal Form, Sections A and B)." *Id.*  Accordingly, the third level appeal decision clearly did not reach the merits of Plaintiff's claim that the housing assignment was retaliatory.  Lastly, none of the appeal decisions at any level addressed Plaintiff's belated claim against Defendant Avalos or issued any decision in that regard.  Therefore, it cannot be said that the

---

[6] At the time, § 3084.1(d) provided in part: "No reprisal shall be taken against an inmate or parolee for filing an appeal." *See supra* at 7, fn. 4.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

exception in *Reyes*, 810 F.3d 654, applies here, where adjudication on the merits of the challenged claim, *i.e.*, the retaliatory housing assignment, did not occur at every level of decision for appeal Log No. CTF-S-18-00262.

In addition, as Defendants point out, the third level appeal decision to limit Plaintiff's appeal to law library access invoked, rather than waived, the procedural defect. Dk. No. 22 at 3. Plaintiff's available administrative remedy at that point was to file a separate grievance about the third level decision, but he did not do so. Therefore, Defendants have shown that there were available administrative remedies which Plaintiff did not exhaust before filing this action. Nor does Plaintiff assert that there was something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *See Albino*, 747 F.3d at 1172. Accordingly, the evidence shows that inmate appeal Log No. CTF-S-18-00262 did not exhaust the claim that Defendants Daguio and Avalos acted in retaliation with respect to the inmate housing assignment that was issued on January 25, 2018.

The evidence also shows that Plaintiff did not exhaust any of the relevant claims in this action through appeal Log No. CTF-S-18-00776. In that grievance, Plaintiff was alleging violations of due process in connection with the disciplinary action for refusing to accept a housing assignment. *See supra* at 5-6. Although he alleged that the housing assignment was a retaliatory action, Plaintiff requested no action in that grievance against Defendants Daguio or Avalos to put prison officials on notice that he was seeking a remedy against them rather than simply challenging the RVR. *Id.* at 6. Furthermore, as Defendants point out, that appeal never received a decision on the merits at the third level of review which cancelled the appeal because the matter was resolved at the previous level. Dkt. No. 21 at 16. Defendants are correct in asserting that if Plaintiff believed the cancellation was improper, he needed to file a grievance challenging that decision. Dkt. No. 22. He did not.

Based on the foregoing, Defendants have shown that Plaintiff failed to properly

14

exhaust all available administrative remedies with respect to his claim that Defendants acted in retaliation when they issued an inmate housing assignment or the RVR on January 25, 2018.  Plaintiff fails to show in opposition that there was something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him or that he was incapable of filing a timely appeal.  *Albino*, 747 F.3d at 1172.  Accordingly, Defendants are entitled to summary judgment under Rule 56 based on Plaintiff's failure to exhaust administrative remedies with respect to these claims.  *Id.* at 1166.

On the other hand, the evidence shows that Plaintiff did exhaust the claim that Defendant Daguio's actions were allegedly retaliatory when he denied Plaintiff access to the law library on January 23, 2018 through inmate grievance Log No. CTF-S-18-00262.[7] The Court did not consider this allegation as a separate retaliation claim in its screening order.  Dkt. No. 8.  Therefore, the Court will screen the claim below.

### III.     Screening of Retaliation Claim for Denial of Law Library Access

#### A.      Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C. § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.  *See id.* § 1915A(b)(1),(2).  Pro se pleadings must, however, be liberally construed.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential

---

[7] Plaintiff also alleged in the grievance that Defendant Daguio's actions denied him access to the courts.  The Court found the allegations were insufficient to state such a claim, and directed Plaintiff to file an amended complaint to correct the deficiencies.  Dkt. No. 6 at 3-4.  The Court dismissed the claim when Plaintiff's amended complaint failed to do so. Dkt. No. 8 at 4.

United States District Court
Northern District of California

elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

### B.   Analysis

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Plaintiff's allegations are insufficient to state a retaliation claim because he fails to satisfy all the elements.  While Plaintiff satisfies the first element, *i.e.*, the adverse action being the initial denial of library access at 8:45 a.m., there is no allegation that he was denied access at that time "because of" the exercise of protected conduct, which are the second and third elements.  It was not until two days later on January 25, 2018, that Defendant Daguio allegedly threatened Plaintiff with a housing assignment if he pursued an administrative grievance against him.  *See supra* at 2.  There was no such threat on January 23, 2018.  Rather, Plaintiff's allegations show that Defendant Daguio told him to return to his cell because the 8:45 a.m. announcement was for "education release only" and Plaintiff did not fall into that category.  *See supra* at 2.  Lastly, Plaintiff does not allege that Defendant Daguio's actions chilled the exercise of his First Amendment rights, nor can he since he was permitted to go to the library just 90 minutes later.  And at no time during the inmate grievance process did Plaintiff allege that the 90-minute delay resulted in harm.  Dkt. No. 20-4 at 3, 5.  A prisoner must at least allege that he suffered harm, since harm that is more than minimal will almost always have a chilling effect.  *Rhodes*, 408 F.3d at 567-68 n.11; *see Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000) (holding that a retaliation claim is not actionable unless there is an allegation of harm).

United States District Court
Northern District of California

Plaintiff has already been afforded one opportunity to amend, and this Court has broad discretion to deny leave to amend where Plaintiff has already been granted leave to file an amended complaint.  *See Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).  Furthermore, it does not appear that Plaintiff could in good faith allege additional facts to cure the defect of this claim.  Accordingly, this retaliation claim is DISMISSED for failure to state a claim.

## CONCLUSION

For the reasons stated above, Defendants R. Avalos and M. Daguio's motion for summary judgment is **GRANTED**.[8]  Dkt. No. 20.  The retaliation claims against them are **DISMISSED** for failure to exhaust administrative remedies, *see Vaden*, 449 F.3d at 1051.

This order terminates Docket No. 20.

The Clerk shall close the file.

**IT IS SO ORDERED.**

**Dated:  _December 30, 2020_____**

BETH LABSON FREEMAN
United States District Judge

Order Granting MSJ
PRO-SE\BLF\CR.17\05569Hackworth_grant-msj(exh)

---

[8] Because there remain no viable claims in the instant action, the Court need not address Defendant's motion for summary judgment on other grounds.

17